UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CR 06-mj-438 (DAR) |
| | : | |
| v. | : | |
| | : | |
| LESTER CRAWFORD | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through undersigned counsel, respectfully submits this Memorandum in Aid of Sentencing.

### BACKGROUND

On October 17, 2006, the defendant pleaded guilty to both counts of a two-count Information charging him with Making a False Writing (in violation of 18 U.S.C. § 1018) and Conflict of Interest (in violation of 18 U.S.C. §§ 208, 216(a)(1)).

The false-writing charge stems from a series of misrepresentations that the defendant made regarding stocks and stock options that he and his wife owned while the defendant served as Deputy Commissioner and Acting Commissioner of the Food and Drug Administration.

In these posts, neither the defendant nor his wife were permitted to own stocks or stock options in "significantly regulated organizations," which are corporations "for which the sales of products regulated by the [FDA] constitute ten percent or more of annual gross sales in the organization's previous fiscal year." 5 C.F.R. § 5501.101(c)(2). In clear violation of this regulation, at various points, the defendant and his wife owned stock in Pepsico, Sysco, Wal-Mart, and Kimberly-Clark, and stock options in Embrex, all of which were significantly regulated organizations.

The defendant went so far as to exercise Embrex stock options and actually purchase shares in 2003 and 2004, netting himself over $28,000 in income. The defendant undertook these transactions not through a broker, but by personally signing forms and sending them to Embrex.

The defendant crossed the line into criminal conduct by repeatedly lying about his and his wife's ownership of these securities, and thus scuttling the Department of Health and Human Service's process for policing its ethics rules. Central to that process was the SF 278 form, which required the defendant periodically to disclose securities owned, sold, and purchased by the defendant and his wife. HHS ethics officials reviewed the forms to ensure that the defendant did not possess forbidden stocks. These officials had no authority to examine the defendant's brokerage accounts, tax returns, or other financial documents to ensure that his SF 278s were accurate.[1] Of necessity, they relied on his candor.[2]

The defendant was not candid.

In his SF 278, covering 2003, which he filed on July 1, 2004, the defendant disclosed ownership of Sysco and Kimberly-Clark stock. An HHS ethics official inquired about the defendant's ownership of these stocks. On December 28, 2004, in an email to the HHS ethics

---

[1] In the middle of 2005, in connection with HHS's review of the SF 278 that he filed in June 2005, the defendant did make his brokerage statements available to HHS. That form was largely accurate, and is not part of the charged conduct.

[2] Unfortunately, the review process is manual and, thus, quite time consuming. HHS ethics officials must physically inspect each form and compare its disclosures to the list of forbidden stocks. They must also visually compare one year's SF 278 to the previous year's to look for a stock that has disappeared from a filer's list of holdings. The officials then ensure that the disappearance is accounted for by a disclosed sale of stock or other transaction. No part of this process is computerized.

official, the defendant stated, "Sysco and Kimberly-Clark have in fact been sold." This was simply not true; as the defendant knew, he and his wife possessed shares in both Sysco and Kimberly-Clark throughout 2003 and 2004.

On this same SF 278, the defendant did not disclose any income from the exercise of Embrex stock options. As the defendant knew, he had earned $8,150 in income in 2003 from the exercise of the Embrex stock options.

The defendant misled not only HHS, but also the United States Senate. In early 2005, President Bush nominated the defendant to be Commissioner of the FDA. As part of the confirmation process, the defendant was required to submit to the Senate Committee on Health, Education, Labor, and Pensions another SF 278 and also a Statement for Completion by Presidential Nominees. On this SF 278, the defendant disclosed neither $20,627.36 that he earned in 2004 from the exercise of Embrex stock options nor his and his wife's ownership of Sysco and Kimberly-Clark stock. The Statement for Completion by Presidential Nominees required the defendant to list the names of all corporations or other institutions "in which you have any financial interest through the ownership of stocks, stock options, bonds, partnership interests, or other securities, which you wish to retain during your period of government service should be noted with an asterisk." [sic] The defendant responded, under oath, "None." This was false; as the defendant knew, he continued to hold options to purchase 30,000 shares of Embrex stock.[3]

---

[3] In 2006, Embrex was removed from the list of "significantly regulated organizations." It was, however, on this list throughout 2002-2005. The defendant's concealment of his ownership of Embrex stock options and the income he derived from the exercise of those options was, therefore, material.

The defendant's criminal conduct extended beyond this series of false writings to a conflict of interest. As Deputy Commissioner, the defendant chaired the FDA's Obesity Working Group, which was tasked with studying the problem of obesity and preparing a report recommending actions that should be taken. The Obesity Working Group was one of the FDA's most significant public-health initiatives. The Group consulted with all manner of consumer, health, and food industry groups, and issued a lengthy report entitled "Calories Count: Report of the Food and Drug Administration Working Group on Obesity." The report made a number of recommendations, including encouraging soft-drink companies to relabel serving sizes. As Chairman of the Obesity Working Group, the defendant supported these recommendations and endorsed them in a hearing before the House Committee on Government Reform.

This was an obvious conflict of interest. At the very time that he was leading the government's study of the country's obesity epidemic, the defendant and his wife held stock in Sysco and Pepsico. It does not take a lawyer to determine that the country's obesity czar should not own stock in corporations that produce fast food, junk food, and soft drinks.

## THE APPROPRIATE SENTENCE

The Presentence Report determined that the defendant's total offense level is four, which corresponds to a guidelines sentence of 0-6 months of incarceration and a fine of $250-$5,000. The government and the defendant agree with the guidelines calculation.

The defendant's violations of criminal law are clear. He lied repeatedly about his ownership of forbidden stocks. The lies were not just on forms, but also in a response to an email, which, one would think, would have caused the defendant to reexamine his brokerage statements. His lies to the Senate about the Embrex stock options were bald and were under

oath. As for his other charge, the defendant's criminal conduct was so obvious as to be almost a caricature of a conflict of interest. Finally, to put it simply, the defendant was the Acting Commissioner of the United States Food and Drug Administration. He knew better.

Nevertheless, there are several mitigating factors that counsel against incarceration.

First, when he joined the FDA in 2002, the defendant and his wife divested from Abbott Labs, American Home Products, Boston Scientific, Johnson & Johnson, Medtronic, Merck, Merrill Lynch Biotech Holdings, Pfizer, and Waters Corporation. If the defendant had been engaged in a scheme to retain stock and then use his government position to make decisions increasing the stock's value, he surely would have retained his stocks in drug companies, which produce a high percentage of products regulated by the FDA. In contrast, although Kimberly-Clark, Pepsico, Sysco, Wal-Mart, and Embrex were "significantly regulated organizations," their activities are far more diversified and, in significant part, unregulated by the FDA. The defendant's ownership of stock in only these five more diversified corporations provided less opportunity for financial gain.

Second, at times, the defendant did admit to his ownership of forbidden stocks. On the SF 278 that the defendant filed in July 2004, he disclosed owning Kimberly-Clark and Sysco stock. Before submitting his nomination SF 278 to the Senate, in February 2005, the defendant prepared a draft to be reviewed by HHS ethics officials. On that draft, the defendant stated that he owned Kimberly-Clark stock. These disclosures, which were interspersed among the defendant's false filings, are inconsistent with a concerted attempt to use one's office for personal gain. If the defendant were engaged in such a scheme, he would have kept his story straight.

Third, the defendant earned $28,777.36 from exercising Embrex stock options and about $10,600 in dividends from the forbidden stocks that he retained. Although this is a considerable sum, it is a small fraction of his net worth – and a small fraction of what an untarnished former FDA Commissioner could have made in private industry. There was, therefore, not much of a financial motive to explain a willful scheme to profit from public office.

Fourth, in 2003 and 2004, the defendant allowed valuable options to purchase a total of 6,500 shares of Embrex expire. Making money from Embrex was, therefore, probably not a high priority for the defendant, which cuts against a theory of deliberate misuse of office for personal gain.

Fifth, in June 2005, the defendant essentially revealed his criminal conduct. In the SF 278 that he then filed, the defendant disclosed the forbidden stocks that he owned, as well as the money he earned from the sale of the Embrex stock he had obtained by exercising options. Had he not made these disclosures, HHS ethics officials probably would not have uncovered much of the defendant's conduct. This act is not consistent with someone engaged in a scheme to defraud or other form of similar conduct.[4]

Sixth, there is no evidence that the Obesity Working Group's conclusions were altered because of the defendant's ownership of Pepsico and Sysco stock.

In sum, although it is impossible to read the defendant's mind, the evidence does not

---

[4]The defendant, through his counsel, filed truthful SF 278 forms in January 2006. By this time, the defendant was no longer in office and his conflicts of interest had come under intense scrutiny. *See, e.g.,* Matthew Herper, *Former FDA Chief Denies Financial Conflicts*, Forbes, September 28, 2005; Robert Pear, *Former Chief of the FDA Wasn't Fired, His Wife Says*, New York Times, September 27, 2005. The horse had left the proverbial barn. The government, therefore, does not view these revelations as significant.

suggest that the defendant was engaged in a concerted scheme to use his high office for personal gain. More likely, the defendant thought that after divesting from his drug stocks, he had done enough to resolve any potential conflicts. He probably did not consider ownership of Pepsico, Kimberly-Clark and the other stocks to be significant. Thus, he would only occasionally conceal his holdings. When questioned directly, the defendant would lie, but probably thought that the lies were not that important because Pepsico and Kimberly-Clark were not, in his mind, Merck and Pfizer.

The defendant's behavior was knowing, arrogant, and criminally indifferent to the government's ethical rules and procedures. But it was not willful and fraudulent, and was motivated neither by a desire to misuse his office for personal gain nor to harm the public.[5]

Given his early acceptance of responsibility, the defendant's actions merit the stigma of criminal convictions, a fine, and probation, but not incarceration.

The government, however, believes that a fine in the guidelines range of $250-$5,000 would be unjustly low. Under application note 4 of § 5E1.2 of the Guidelines:

> where a sentence within the applicable fine guideline range would not be sufficient to ensure both the disgorgement of any gain from the offense that otherwise would not be disgorged (e.g., by restitution or forfeiture) and an adequate punitive fine, an upward departure from the fine guideline range may be warranted.

The Court also has authority, under 18 U.S.C. § 3553(a), to impose a fine above the guidelines range.

The government asks the Court to depart upward from the fine guidelines range, and

---

[5]The two charges to which the defendant pleaded guilty require a showing of knowledge, but not of willfulness. In contrast, felony conflict of interest, 18 U.S.C. §§ 208, 216 (a)(2), and felony false statements, 18 U.S.C. § 1001, both have a willfulness *mens rea*.

impose a fine of $50,000. The defendant earned $28,777.36 from exercising his Embrex stock options and about $10,600 in dividends from the forbidden stocks that he and his wife retained.[6] An appropriate fine should be greater than the sum of these amounts, and should also include a punitive element. The government and the defense agree that the appropriate fine should be $50,000, and the government asks that the Court find that such a fine is appropriate under both 18 U.S.C. § 3553(a) and the Guidelines.

In conclusion, the government respectfully requests that the Court sentence the defendant to a term of probation, community service, and a fine of $50,000.

Respectfully submitted,

JEFFREY A. TAYLOR
D.C. Bar Number 498610
United States Attorney

_____
HOWARD R. SKLAMBERG
D.C. Bar Number 453852
Assistant United States Attorney
Fraud & Public Corruption Section
555 Fourth Street, N.W.
Washington, DC 20001
(202) 514-7296

_____
TIMOTHY G. LYNCH
D.C. Bar Number 456506
Assistant United States Attorney
Fraud & Public Corruption Section
555 Fourth Street, N.W.
Washington, DC 20001
(202) 353-4862

---

[6] The defendant did pay taxes on this money.

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was served by electronic mail upon Barbara Van Gelder, Esq., this 16th day of January, 2007.

_____
Howard R. Sklamberg