UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| UNITED STATES | : | | |
| | : | | |
| v. | : | Crim. Action No.: | 06-mj-438 (DAR) |
| | : | | |
| LESTER M. CRAWFORD, | : | | |
| | : | | |
| Defendant. | : | | |

**SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING**

Lester M. Crawford, through undersigned counsel, respectfully submits this Supplemental Memorandum in Aid of Sentencing pursuant to the Court's request. On October 17, 2006, Dr. Crawford appeared before the Court to plead guilty to two misdemeanor violations of 18 U.S.C. § 1018 (Making a False Writing) and 18 U.S.C. §§ 208, 216(a)(1) and 5 C.F.R. § 2640.202(c) (Conflict of Interest). On January 23, 2007, the Court requested additional briefing from the parties and the U.S. Probation Office ("USPO") on certain questions pertaining to the application of the U.S. Sentencing Guidelines ("Guidelines" or "USSG") and the Sentencing Reform Act ("SRA"). This supplemental memorandum provides our legal analysis and conclusions regarding the Court's questions.

I.      Legal Analysis & Conclusions

    A.      **Application of Grouping Rules**

Under the Guidelines, where a defendant has been convicted of more than one count, the Court must group the counts according to the rules set forth in § 3D1.2. USSG § 3D1.1(a). Under those rules, all counts involving substantially the same harm are to be grouped together into a single group. Id. § 3D1.2. Counts involve "substantially the same harm" within the meaning of this rule when (a) the counts involve the same victim and the same act or transaction,

- 1 -

(b) the counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan, (c) one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts, or (d) when the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of the substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.[1]  Id.

      At the outset, the parties and the USPO agree that grouping the two counts is appropriate under § 3D1.2 because the two counts involve substantially the same harm.  Id.  With regard to the specific rationale, we suggest that the counts be grouped under subsection § 3D1.2(a) because the counts involve the same victim and the same act or transaction.[2]  Id. § 3D1.2(a).  In both counts, the victim is the societal interest in a strong system of government ethics for federal public officials, and the two counts represent "essentially a single injury" to that victim: failure to comply with federal ethics rules regarding stock holdings.  Id. § 3D1.2 cmt. n.2-3; e.g., United

---

[1] Subsection (d) lists certain offenses – such as property offenses, drug offenses, firearms offenses, and other crimes where the guidelines are based primarily on quantity or contemplate continuing behavior – that are to be grouped under that particular subsection.  USSG § 3D1.2(d) cmt. n.6.  For the reasons noted below, subsection (d) does not apply here.

[2] It is our understanding that the Government and the USPO now agree that subsection (a) applies, and that subsections (b), (c), and (d) do not.  Subsection (b) does not apply because there is no evidence in this case of a "common criminal objective" or "common scheme or plan" on the part of Dr. Crawford.  USSG § 3D1.2(b); e.g., Gov't's Sentencing Mem. at 5-7 & n.5 (indicating that Dr. Crawford's behavior was not willful and that he was not engaged in a scheme to defraud); Def.'s Sentencing Mem. at 7 n.11 (noting that Dr. Crawford's disclosures were not consistent among filings, which is inconsistent with an objective of hiding assets).  Subsection (c) is inapplicable, as neither of the counts embodies conduct that is an offense characteristic in the guideline applicable to the other count.  USSG § 3D1.2(c).  Finally, subsection (d) does not apply because the offense level here is determined based on the type of offense, rather than on the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, and the offense behavior is not ongoing or continuous in nature.  Id. § 3D1.2(d).

States v. Gastelum-Almeida, 298 F.3d 1167, 1175 (9th Cir. 2002) (describing a societal interest in "the provision of truthful information").  Hence, we submit that subsection (a) applies.[3]

B.    **Fine Calculation**

Under the SRA, the maximum fine for each of the two misdemeanor counts is $100,000.  18 U.S.C. § 3571(b)(5); Presentence Investigation Report ("PSR") ¶ 93.  In determining a just and appropriate fine within this statutory framework, the Court must consider the goals set forth in the SRA, including (1) promoting respect for the law, (2) providing just punishment for the offense given the circumstances, (3) affording an adequate deterrent to criminal conduct, and (4) protecting the public from further crimes.  18 U.S.C. § 3553(a)(2); United States v. Booker, 543 U.S. 220, 260 (2005).

In this case, the parties believe that a fine of $50,000 would be reasonable and appropriate in light of the goals set forth in the SRA.[4]  Plea Agreement at 3.  During the relevant time period, the Crawfords received dividends in the amount of $10,676 from their holdings of significantly regulated stock and income in the amount of $28,777 from the exercise of the stock options.  PSR ¶¶ 21, 24, 26.  A disgorgement of these funds in the amount of $39,453 would be an appropriate means of promoting respect for the law, and would be in keeping with Dr. Crawford's desire to set things right.  In addition, the government has recommended, and Dr. Crawford has agreed to pay, an additional amount of $10,547 as a punitive element to reflect the seriousness of the offense and contribute to a just punishment for his actions.  Therefore, we

---

[3] Even if the parties and the USPO disagreed as to the applicable grouping subsection, the court would be authorized to proceed with sentencing because such a dispute would not affect sentencing. Fed. R. Crim. P. 32(i)(3)(B).

[4] Under the Guidelines, the recommended fine is $250-$5,000.  USSG § 5E1.2(c)(3).  While the Court must consider Guidelines ranges, the Court is free to tailor its sentence in light of the above-mentioned goals of the SRA.  Booker, 542 U.S. at 245-46, 259-60.

respectfully submit that a fine of $50,000 would be just and appropriate, and would fulfill the SRA's goals.[5]

### C.  Application of Loss Specific Offense Characteristic

Count 1 of the Information sets forth a misdemeanor violation of 18 U.S.C. § 1018 (Making a False Writing).  The relevant sentencing guideline for this count is § 2B1.1.  USSG § 2B1.1 & app. A.  Applying this guideline, the parties concluded that the base offense level for this count is 6, and that none of the specific offense characteristics apply.[6]  Plea Agreement at 2 (citing § 2B1.1(a)(2), (b)).

The parties' reasoning regarding offense characteristics – specifically, the offense characteristic of loss – is based on the offense conduct.  As outlined in the Information, Dr. Crawford submitted certain financial documents containing errors and omissions to government officials.  The act of submitting these documents – i.e., the offense conduct – did not create a loss: there was no "reasonably foreseeable" or other pecuniary harm to the Government or any

---

[5] The SRA's alternative fine provision does not apply in this case.  18 U.S.C. § 3571(d).  The offense conduct charged in this case is the making of a false writing in violation of 18 U.S.C. § 1018 and the holding of stocks that created a conflict of interest in violation of 18 U.S.C. § 208 and 5 C.F.R. § 2640.202(c).  Neither the Government nor any other person suffered pecuniary loss from the fact of the false writing or the fact of the conflict of interest.  Unlike a false statement in support of a claim for payment under 31 U.S.C. § 3729(a)(2), there was no gain or loss associated with the making of the false writing or the holding of the stocks.  To the extent that Dr. Crawford derived pecuniary gain from income earned on assets that were omitted from the financial documents or that created the conflict, we submit that the application of § 3571(d) would not be just or reasonable under the SRA's goals, given that Dr. Crawford's conduct was not motivated by financial gain.  E.g., Gov't's Sentencing Mem. at 7 (concluding that Dr. Crawford's behavior was not motivated by a desire to misuse his office for personal gain); Def.'s Sentencing Mem. at 6 (stating that Dr. Crawford's mistakes were not undertaken for personal financial gain); cf. United States v. Ferranti, 928 F. Supp. 206, 220 (E.D.N.Y. 1996) (justifying the doubling of a fine under § 3571(d) for an arson crime that "was essentially . . . based on greed").  Indeed, we have not been able to identify any case in which a court has applied § 3571(d) in sentencing defendants convicted of offenses under 18 U.S.C. §§ 208 or 1018.  In this case, the proposed fine is already well above the Guidelines range for these offenses, and we believe has been tailored to fulfill the SRA sentencing goals.

[6] In applying the grouping rule of § 3D1.3, the USPO chose to calculate the offense level for Count 2 rather than Count 1.  PSR ¶ 46.  The PSR therefore does not include an offense level calcuation for Count 1.

other person as a result of this action.[7]  USSG § 2B1.1 cmt. n.3(A).  Therefore, we submit that under the Guidelines, a loss specific offense characteristic cannot apply.

### D. Application of Adjustment for Obstruction

The Guidelines provide for an upward adjustment of two levels for obstructing or impeding the administration of justice.  USSG § 3C1.1.  For the adjustment to apply, the defendant must have obstructed or impeded the administration of justice "during the course of the investigation, prosecution, or sentencing" of the offense of conviction.  Id. & cmt. n.1.

In this case, there is no evidence of obstruction before, during, or after the Government's investigation.  See generally Information; Statement of Offenses; PSR.  If anything, the opposite is true.  The Inspector General's investigation into Dr. Crawford's financial holdings did not begin until after he retired from the Food and Drug Administration.  Dep't of Justice Press Release (Oct. 17, 2006).  Upon learning of the investigation, Dr. Crawford extended his full cooperation, and later reached out to the Office of the U.S. Attorney to indicate that he would accept responsibility for his actions.  The ample evidence of Dr. Crawford's cooperation and the complete lack of evidence of obstruction on his part precludes the application of this guideline.

## II. Conclusion

In conclusion, we believe that the sentencing calculations reflected in the PSR and the Plea Agreement are grounded in a careful application of the law and the Guidelines to the facts of this case.  Dr. Crawford has agreed to take responsibility for his actions.  He has pled guilty to

---

[7] To the extent that the assets omitted from the financial documents created a gain for Dr. Crawford, that gain could be used as an alternative measure of loss "only if there is a loss [that] reasonably cannot be determined."  USSG § 2B1.1 cmt. n.3(B).  Since there is no evidence of loss in this case, any such gain would be irrelevant and could not be considered.

two criminal counts for his actions – actions that in other cases resulted in civil settlements.[8] He has done so despite the fact that – as recognized by the Government and evidenced by the record – he never had an intent to defraud or realize personal gain from his actions. Dr. Crawford is now retired from government service, but the stigma of his conviction will follow him the rest of his life. In keeping with the facts of this case and the goals of the Sentencing Reform Act, we therefore respectfully request that the Court impose a sentence of a minimal period of unsupervised probation accompanied by a $50,000 fine and a $50 special assessment.

        Respectfully submitted,

        WILEY REIN LLP

        By: /s/ Barbara Van Gelder              .

        Barbara Van Gelder (D.C. Bar #265603)
        Wiley Rein LLP
        1776 K Street NW
        Washington, DC 20006
        TEL: 202.719.7502
        FAX: 202.719.7049

Dated: February 6, 2007        *Attorney for Dr. Lester M. Crawford*

---

[8] E.g., 1996 Conflict of Interest Prosecution Survey, Office of Government Ethics (Aug. 12, 1997) (describing the civil prosecution of former Equal Employment Opportunity Commission chairman Evan Kemp for failure to file a termination SF 278, and noting that the case was resolved with a $4,000 civil penalty); Standards of Conduct Office (SOCO) Advisory, Dep't of Defense (Sept. 4, 1997) (describing the conflict-of-interest prosecution of former national security advisor Tony Lake for participating in matters affecting his energy stock holdings that he had been advised but failed to sell, and noting that the case was resolved with a $5,000 civil penalty).

## **CERTIFICATE OF SERVICE**

 I hereby certify that a copy of the foregoing was served by electronic mail on February 6, 2007 on:

  Howard R. Sklamberg, Esquire
  Timothy G. Lynch, Esquire
  Assistant U.S. Attorneys
  Fraud & Public Corruption Section
  555 Fourth Street, NW
  Washington, D.C. 20001

      By: /s/ Barbara Van Gelder           .

      Barbara Van Gelder (D.C. Bar #265603)
      Wiley Rein LLP
      1776 K Street NW
      Washington, DC 20006
      TEL: 202.719.7502
      FAX: 202.719.7049

      *Attorney for Dr. Lester M. Crawford*