UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CR 06-mj-438 (DAR) |
| | : | |
| v. | : | |
| | : | |
| LESTER CRAWFORD | : | |

## GOVERNMENT'S SUPPLEMENT TO MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through undersigned counsel, respectfully submits this Supplement to its Memorandum in Aid of Sentencing.

### BACKGROUND

On January 23, 2007, the defendant appeared for sentencing on his plea to Making a False Writing, in violation of 18 U.S.C. § 1018, and misdemeanor Conflict of Interest, in violation of 18 U.S.C. §§ 208, 216(a)(1). The Court ordered the parties to brief four Sentencing Guidelines issues:

1) Why, under U.S.S.G. § 2B1.1, is the loss amount zero?

2) Why, under § 3D1.2, do the two offenses group?

3) Does the enhancement for obstruction of justice, under § 3C1.1, apply?

4) Why, under § 5E1.2, 18 U.S.C. § 3571(d), and 18 U.S.C. § 3553, is the appropriate fine $50,000?

The Court then scheduled a new sentencing date of February 27, 2007.

The government will now address the Guidelines issues raised by the Court.

## ANALYSIS

1) <u>Why, under § 2B1.1, is the loss amount zero?</u>

Section 2B1.1, which is the appropriate Guideline for the defendant's false-writing conviction, provides for a base offense level of six, and an escalating enhancement when "the loss exceed[s] $5,000." The parties and the presentence report agree that the loss is zero. The Court noted that, as the factual proffer indicates, the defendant earned $28,777.36 from exercising his Embrex stock options and about $10,600 in dividends from the forbidden stocks that he and his wife retained. The Court inquired whether the loss would be the sum of these numbers, rather than zero.[1]

The reason that the loss in this case is zero lies in the nature of the defendant's false-writing crime. The criminal offense, in this case, is not the defendant's exercise of his Embrex stock options or his ownership of stock in, and thus receipt of dividends from, Kimberly-Clark, Sysco, Pepsico, and Wal-mart. These transactions violated federal regulations, but were not crimes. Moreover, as the government stated in its Memorandum in Aid of Sentencing, there is no evidence that the stock transactions were part of a misuse of office for personal gain, a scheme to defraud, or other similar form of criminal conduct. Instead, the false-writing is based on a series of lies the defendant told about the transactions.

---

[1] Paragraph 9 of the Information states that, in 2002, the Crawfords "also retained stock, owned by CRAWFORD's wife, in Wal-mart, which was also a significantly regulated organization, but which CRAWFORD did not disclose on his first SF 278." Defense counsel has correctly informed the government that the Crawfords first purchased their Wal-mart stock in January 2003. The defendant is not charged with any crime for his ownership of the Wal-mart stock. The precise date of the purchase of the stock should not affect the Guidelines calculations.

These lies did not cause a "loss," as defined by the Sentencing Guidelines. The metric for the "loss" amount is the actual or reasonably foreseeable "pecuniary harm," which is "harm that is monetary or that otherwise is readily measurable in money." § 2B1.1, app note 3(A)(iv). The defendant's lies on his disclosure forms and to the Senate did not produce a harm that is "monetary or that otherwise is readily measured in money."

The defendant's conduct also did not produce a gain that would affect the Guidelines calculation. The Guidelines instruct that the "court shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined." § 2B1.1 app note 3(B). As explained above, there is no loss that "reasonably cannot be determined." Thus, the Court should not use gain to determine the applicable Guidelines level. Even if gain were relevant, any gain to the defendant was from his illegal, but not criminal, stock transactions. There was no gain "from the offense" of filing disclosure forms with the Department of Health and Human Services and the Senate.

Therefore, the loss amount for the defendant's false-writing offense is zero, and the offense level is six.

2)    <u>Why, under § 3D1.2, do the two offenses group?</u>

The Court next inquired whether the defendant's false-writing and conflict-of-interest crimes group.

Section 3D1.2(a) provides that counts of conviction group when they "involve the same victim and the same act or transaction." Application note 2 states that in cases, such as this one, where there is no identifiable victim, "victim" is defined by "the societal interest that is harmed." Application note 3 adds that "counts are to be grouped when they represent essentially a single

injury or are part of a single criminal episode or transaction involving the same victim." The defendant's conduct is a single episode that harmed society's interest in having a Deputy FDA Commissioner and an FDA Commissioner who does not make any decisions in which he has a conflict of interest. The disclosure forms and Senate questionnaire were intended to detect and ferret out potential conflicts. Thus, the defendant's lies on these forms and his actual conflict of interest undermined the same societal interest.[2] His two crimes should group.

3) <u>Does the enhancement for obstruction of justice, under § 3C1.1, apply?</u>

The Court asked the parties to brief whether § 3C1.1's enhancement for obstruction of justice applies.

The investigation of this matter, by the Office of Inspector General of the Department of Health and Human Services and by the United States Attorney's Office, began in the fall of 2005, after the defendant's employment at the FDA ended. There is no evidence of any deception or other form of obstruction of justice by the defendant after this time.

The defendant's false-writing crime did involve a series of lies to ethics officers and to the Senate. However, all of these lies occurred *before* the criminal investigation. The applicable Guidelines provision is Application note 1 of § 3C1.1, which states:

> Obstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction.

---

[2] One can argue that the defendant's offenses group under § 3D1.2(b) rather than § 3D1.2(a). While the government believes that § 3D1.2(a) is the applicable provision, the Court need not decide between the two because, either way, the offense level would be the same. *Cf.* Fed. R. Crim. P. 32(i)(3)(B) (sentencing court may refrain from deciding an issue if it "determine[s] that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter at sentencing.")

The defendant took no action aimed at thwarting the investigation or prosecution of his case. Indeed, as page six of the government's Memorandum in Aid of Sentencing points out:

> in June 2005, the defendant essentially revealed his criminal conduct. In the SF 278 that he then filed, the defendant disclosed the forbidden stocks that he owned, as well as the money he earned from the sale of the Embrex stock he had obtained by exercising options. Had he not made these disclosures, HHS ethics officials probably would not have uncovered much of the defendant's conduct.

A defendant who, in this manner, reveals much of his criminal conduct prior to the initiation of a criminal investigation should not receive an enhancement for obstruction of justice.

4)   <u>Why, under § 5E1.2, 18 U.S.C. § 3571(d), and 18 U.S.C. § 3553, is the appropriate fine $50,000?</u>

The defendant and the government agreed that the appropriate fine is $50,000. Given that the Guidelines range is $250-$5,000, the Court directed the parties to address why this fine is appropriate under the above provisions.

The Court first raised 18 U.S.C. § 3571(d). Normally, the statutory maximum fine for each of the two counts to which the defendant pleaded guilty is $100,000. 18 U.S.C. § 3571(d) authorizes an alternative maximum fine of "twice the gross gain or twice the gross loss" when "any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant." As explained above, there is no pecuniary gain or loss from the defendant's "offense[s]". The statute, therefore, does not apply.[3]

In its Memorandum in Aid of Sentencing, the government argued that, under application note 4 of § 5E1.2 and under 18 U.S.C. § 3553(a), a fine of $50,000 is appropriate. The

---

[3]Even if this statute applied, it would only authorize a statutory maximum fine of greater than $100,000 for the relevant count. It would not affect the Guidelines calculation or the legality of a fine above the Guidelines range.

government adheres to this view.

Section 5E1.2(d) outlines a series of factors that a court must consider in determining the fine. Among these factors are "the need ... to promote respect for the law, to provide just punishment and to afford adequate deterrence," § 5E1.2(d)(1), and "any other pertinent equitable considerations." § 5E1.2(d)(8). Section 5E1.2 concludes, "The amount of the fine should always be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive." Application note 4 of § 5E1.2 authorizes an upward departure from the Guideline fine range to ensure "an adequate punitive fine."

In this case, a fine below $50,000 would not be adequately punitive. The defendant received about $39,377.36 from his stock transactions, which violated federal regulations.[4] Although the defendant did not gain monetarily from his *criminal* offenses of submitting false documents and conflict of interest, this $39,377.36 went into the defendant's pocket. It would not "promote respect for the law," "provide just punishment," or "afford adequate deterrence" if the defendant did not receive the $50,000 fine to which the parties have agreed.

The defendant's position atop one of the government's most important agencies also militates in favor of a fine of $50,000. This fine would be "just" because the defendant knew better and would "afford adequate deterrence" to high officials in similar positions and to civil-service employees throughout the government, who must comply with the same standards.

A $50,000 fine is not only appropriate under the Sentencing Guidelines, but is also consistent with 18 U.S.C. § 3553(a). The Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005), held that the Sentencing Guidelines are "advisory rather than mandatory." *United*

---

[4]*See* Paragraphs 13, 16, and 18 of the Statement of Offenses.

States v. Coles, 403 F.3d 764, 765 (D.C. Cir. 2005). A sentencing court must "consider Guidelines ranges," but may "tailor the sentence in light of other statutory concerns as well, see 18 U.S.C. § 3553(a)." *Booker*, 543 U.S. at 245-46. A court has the authority to impose a fine greater than the Guidelines range, if that fine is consistent with 18 U.S.C. § 3553(a). *Cf. United States v. Rinaldi*, 461 F.3d 922, 931-32 (7th Cir. 2006) (upholding a fine in excess of the Guidelines range, reasoning that, in light of 18 U.S.C. § 3553(a), "we cannot say that the district court's sentence was unreasonable").

Among the factors enumerated in § 3553(a) are: "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the seriousness of the offense, ... respect for the law, and ... just punishment for the offense;" and "adequate deterrence." These factors overlap somewhat with those outlined in § 5E1.2(d)(8) of the Guidelines. For the reasons stated above, a fine of $50,000 would be "just," would promote "respect for the law," and would "provide adequate deterrence." This fine would also be consistent with this defendant's characteristics (among them, the high position that he held) and reflect "the seriousness of the offense[s]."[5]

## CONCLUSION

The government respectfully requests that the Court sentence the defendant to a term of supervised probation, community service, and a fine of $50,000.[6]

---

[5] The nature and seriousness of the offenses are discussed more fully in the Government's Memorandum in Aid of Sentencing

[6] The government opposes the defendant's request for unsupervised probation. Supervision would be necessary to monitor the defendant's compliance with a community-service requirement, if the Court were to impose one. Also, supervision (which government counsel understand to be this Court's general practice in misdemeanor cases) is particularly

Respectfully submitted,

JEFFREY A. TAYLOR
D.C. Bar Number 498610
United States Attorney

*signature*

HOWARD R. SKLAMBERG
D.C. Bar Number 453852
Assistant United States Attorney
Fraud & Public Corruption Section
555 Fourth Street, N.W.
Washington, DC 20001
(202) 514-7296

*signature*

TIMOTHY G. LYNCH
D.C. Bar Number 456506
Assistant United States Attorney
Fraud & Public Corruption Section
555 Fourth Street, N.W.
Washington, DC 20001
(202) 353-4862

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was served by electronic mail upon Barbara Van Gelder, Esq., this 6th day of February, 2007.

*signature*
Howard R. Sklamberg

---

appropriate in a case in which the defendant has pleaded guilty to an offense involving lies or misrepresentations. Unsupervised probation requires the Court to take the defendant at his word that he will comply with conditions of probation. One who has pleaded guilty to telling a series of lies does not deserve this benefit.

Defense counsel has pointed out that the defendant's employment frequently involves travel. For this reason, the government is not seeking a travel restriction as a term of probation.

-8-